IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DAVID GUNDERSON,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 13-35-BLG-CSO<br><br>ORDER DENYING PETITION AND DENYING CERTIFICATE OF APPEALABILITY |

This case comes before the Court on Petitioner David Gunderson's application for writ of habeas corpus under 28 U.S.C. § 2254. Upon the parties' consent, the matter was assigned to the undersigned for all district court proceedings, including entry of judgment. Doc. 27.

I. **Background**

Gunderson challenges his conviction by a jury of burglary and attempted sexual intercourse without consent. All but one of his claims for relief have been addressed on the merits *de novo* and denied. *See* Findings and Recommendation (Doc. 12) at 11; Order (Doc. 13) at 2.

The sole remaining claim alleges that trial counsel was ineffective because he did not request a jury instruction on criminal trespass, a lesser-included offense

1

of burglary. The claim was defaulted in state court, but the default was excused under *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911 (2013). The parties conducted discovery and have submitted briefs.

## II. Analysis

### A. The Trial Record

#### 1. Legal Framework

Gunderson was charged with burglary, a violation of Mont. Code Ann. § 45-6-204(1) (2005) (Count 1), and attempted sexual intercourse without consent ("rape"), a violation of Mont. Code Ann. §§ 45-4-103 and -5-503 (Count 2).

To prove burglary, the State had to prove two elements: (1) that Gunderson knowingly entered or remained in the victim's (Stephanie Randall's) apartment unlawfully, and (2) that he did so with the intention of committing any other offense within the apartment. The State predicated sexual assault[1] as the offense

---

[1] The Court previously misstated that sexual intercourse without consent was the predicate offense for the burglary charge. *See* Order (Doc. 12) at 5. In fact, sexual assault, not rape, was the burglary predicate.
  It appears the jury was informed at the outset of the case that Gunderson was charged with burglary and attempted sexual intercourse without consent. Although the State was ordered to file the jury instructions, it does not appear that Jury Instr. No. 1 (Doc. 11-2 at 2-3) is "the Court's Preliminary Instruction No. 1" that was read to the panel of prospective jurors. The instruction does not state the charges against Gunderson. The prosecutor said, when introducing herself to the prospective jurors, that Judge Todd had informed everyone of the charges, but the transcript before this Court does not show what he said. *See* Trial Tr. (Doc. 7-2) at 11:15-23, 15:13-19. It appears that the jury was instructed on the elements of the offenses, including the predicate offense for burglary, just before closing argument. *See* Trial Tr. (Doc. 7-4) at 464:4-19,

2

Gunderson intended to commit – that is, it alleged that Gunderson entered Randall's apartment intending to subject her to sexual contact without her consent. Jury Instr. No. 12 (Doc. 11-2 at 20); Jury Instr. No. 15 (Doc. 11-2 at 23).

Criminal trespass is a lesser included offense of burglary. To prove criminal trespass, the State would have to prove only the first element of burglary – that is, that Gunderson knowingly entered or remained unlawfully in Randall's apartment. Mont. Code Ann.§ 45-6-203(1)(a) (2005). The State did not charge Gunderson with criminal trespass, and Gunderson's counsel did not request a jury instruction on criminal trespass.

To prove attempted rape, the State had to prove beyond reasonable doubt that Gunderson attempted to penetrate Randall's vulva or anus for his sexual gratification and without her consent. *See* Mont. Code Ann. § 45-2-101(68). To prove attempt, the State had to prove that Gunderson "performed an act which constituted a material step toward the commission" of rape "with the purpose to commit" rape. Jury Instr. Nos. 18, 20 (Doc. 11-2 at 26, 28). Sexual assault, as mentioned, consists of knowingly subjecting someone to sexual contact without consent. *Id.* § 45-5-502(1). It is a lesser included offense of rape. The State did not charge Gunderson with sexual assault, and Gunderson's counsel did not request a jury instruction on sexual assault or attempted sexual assault.

---

468:2-9.

As pertinent here, both criminal trespass and sexual assault were misdemeanors. *Id.* §§ 45-6-203(2), -5-502(2). Both burglary and rape were felonies. *Id.* §§ 45-6-204(3), -5-503(2).

### 2. Randall's Testimony

At trial, Stephanie Randall testified that she arrived home at about 2:00 a.m. on July 3, 2007. While she was making herself something to eat, someone knocked at the door of her apartment. She answered. It was Gunderson, but Randall did not know him. Gunderson asked to use Randall's telephone. Randall told him she did not have a phone and shut the door. She returned to her kitchen. After she finished her snack, she went to bed.

About half an hour later, Randall woke "to somebody getting in my bed," kissing her neck and touching her thigh. He pulled her underwear down four to six inches, but she stopped him by grabbing his hand. He also pinned her arms on the bed while she was on her back, but she struggled free. She reached up and turned on the light, which she could reach without getting out of bed. She immediately recognized the man who had earlier knocked on her door. His shirt and his shoes – new and brightly white – were on the floor, but he was wearing pants. She "was screaming pretty loudly" at him to get out. He was "telling [her] to knock it off and to calm down." Randall physically tried to throw him out, but he was concerned about retrieving his shoes and shirt. As he was attempting to pick them up, Randall

4

grabbed his hair and started to drag him out of her apartment. She scratched his neck. Eventually she picked up his shoes and carried them to the front door. It was locked. She unlocked it, opened it, threw the shoes out, and ordered him to get out. When he was gone, Randall called 911.

### 3. Police and Other Witnesses' Testimony

In response to the 911 call, police located Gunderson a few blocks away from Randall's apartment, walking with another man. Based on Randall's description, Gunderson's bright white shoes, and fresh scratch marks on Gunderson's neck and face, he was stopped and asked to take a portable breath test. His blood alcohol content was 0.086. He was arrested for a parole or probation violation.

Gunderson told police he had taken a taxi to the Crystal Lounge earlier that night and jumped out without paying. After he went into the Crystal Lounge, a local bar, he got into a fight with a man who scratched him on the neck, and then he was thrown out. He claimed he had been in a different part of town at the time of the crime. Gunderson told police he did not enter Randall's apartment and stated his DNA would not be found there.

Gunderson was photographed at the detention center. He had scratches not only on his face and neck but also one on his hand and one on his shoulder or chest that had previously been obscured by his shirt. Randall said she had seen "some

tattoos" and most clearly remembered one somewhere on his chest or shoulder; Gunderson had several tattoos on his chest and shoulder.

Shortly after the incident, Randall was shown a photographic lineup. She "immediately," in "seconds," identified Gunderson as the man who entered her apartment. Gunderson's DNA was not found in the apartment, but it was identified in a small scraping of blood taken from Randall's hand.

Police determined that several businesses surrounding Randall's duplex all had accessible pay phones. An employee of the Crystal Lounge and the owners of the two taxi cab companies in Billings could not corroborate Gunderson's claims that he took a taxi to the Crystal Lounge or that he got into a fight there.

### 4. Gunderson's Testimony

Gunderson testified as the last witness in the case. Despite the lack of corroboration, he maintained he had cheated a taxi driver and been in a fight just outside the Crystal Lounge. He admitted his neck was not scratched at the Crystal Lounge. He explained that his hand injury came from construction work, and he re-injured it by scraping it on the concrete outside the Lounge.

Gunderson also admitted he was in Randall's apartment that night. He said he saw Randall enter her apartment alone in the early hours of the morning. He admitted he did not want to use the phone but "just used that for an excuse to see who it was," because he thought he recognized "that chick" or "that broad" from

the Rainbow Bar. He also said he wanted to "give her a chance to see if she recognized me." He said she opened the door to him but mumbled something and closed it in "[n]ot even a second." Trial Tr. (Doc. 7-3) at 394:23-396:20, 443:11-24, 446:12-15.

Gunderson returned half an hour later. He admitted the apartment was dark. He said he approached the door, opened the screen door, and found the inside door open about "half a foot." He entered the apartment, went into the kitchen, and then asked in a loud voice whether anyone was home. He thought he heard a noise or a voice and started down the short hallway saying "Where you at?" "Next thing I know, I'm standing in the middle of her bedroom." *Id.* at 396:12-398:14, 424:21-430:4.

Someone – Gunderson was not sure at first whether it was the same person who had answered the door half an hour earlier – was lying in the bed with her back to him with a sheet "across the hip and most across the thigh going down towards the thigh." At that point, he knew it was the same person he had seen earlier. Trial Tr. (Doc. 7-3) at 398:15-399:9. Gunderson testified:

> I sat down on the edge of the bed, and I said, "Hey, what's up?" And I put my hands on her hip and kind of on her – by the kidney here and then I moved it down to her leg. I said, "Hey." And at that time I kicked my shoes off, because I just bought those shoes and my feet was sweating. My feet was hurting from walking. And I turned and I didn't want to put my shoe up on the bed. So when I turned sideways on the mattress to talk to her, she rolled over. She said, "What are you

7

doing? What are you doing in my house?" I said, "I'm going to come over and bullshit with you."

Trial Tr. (Doc. 7-3) at 399:11-21. Randall yelled at him. Gunderson told her, "'I thought I heard you say come in or something.'" When Randall got up, Gunderson said, "Where you going, man?" Asked what Randall's demeanor was when she got out of bed, Gunderson said, "Kind of like aggressive,""[k]ind of like mad I was there." *Id.* at 399:22-400:21; *see also id.* at 430:5-437:9.

Gunderson denied that he was trying to have sex with Randall and denied returning to her apartment for that purpose. (He also denied touching her at all, even though he had just said he "put my hands on" her hip and leg.) *Id.* at 402:17-403:6. On cross-examination, he reiterated:

> I had no intentions of that. If I was going to rape her or do something sexually to her, you know, if that's where my mind, my train of thought is at, then I had all the opportunity to do it.
> . . . I didn't try nothing sexual on her, you know. I could have – there's a lot of things a guy could have did. I didn't attempt to do nothing. I know for a fact I didn't. I sat on the edge of the bed and didn't make no attempts to do anything sexual to her.

Trial Tr. (Doc. 7-3) at 446:18-447:3.

Gunderson admitted at trial that he given several different stories to law enforcement officers about what occurred that night. *Id.* at 405:7-14; 408:13-409:6, 412:20-413:6.

8

### 5. Closing Arguments

In closing, defense counsel conceded Gunderson "didn't have any invitation or business being in Stephanie Randall's apartment. Her apartment is an occupied structure. He entered without permission." Trial Tr. (Doc. 7-4) at 487:14-17. He focused instead on the second element of burglary, intent to commit the offense of sexual assault.

> And by Stephanie Randall's own admission to Detective Paharik, there was no sexual contact. Detective Paharik . . . asked her, "And in no way was there any sexual contact; is that correct?" and she said, "Yeah, that's right."
> If Mr. Gunderson was entering with the intent to perform sexual contact on Stephanie Randall, why didn't he do that? And he had ample opportunity. She was at least nude from the waist up. And there's sexual areas there on a woman's body, and he did not touch her there. He could have committed a sexual contact, sexual assault right then and there, and he did not do that by her own admission.

*Id.* at 487: 24-488:11.

As to sexual intercourse without consent, counsel argued:

> It's possible to [commit the crime] with a finger or another body part other than the sexual organ, but, again, there's no evidence that Dave Gunderson tried to do that. He had the chance, he could have just put his hand down there. I mean she's lying there helpless, asleep. What's stopping him from putting his hands down there? He didn't do that. He did not do that. And of course then there's the old fashion way to do it, which we all know how to do that. And if Dave Gunderson is going to have sexual intercourse, why, for crying out loud, does he still have his pants on?

*Id.* at 490:21-491:6. Counsel concluded:

9

> That's all I've got. I just want to tell you, and I think you know this, you have Dave Gunderson's life in your hands; okay? Give this case the most serious consideration that you've given anything that you've ever had to decide. Look at all the evidence, look at what's not there. Use your common sense. Even though Dave Gunderson did a stupid, foolish thing that night and wasn't thinking clearly when he did go into Stephanie Randall's apartment, he did not go in with the intention to commit a sexual assault. He had plenty of chances to do that, and he didn't do it. And he certainly did not go in there and did not try to have sex with her, because there's no proof of that, and he had his pants on, and all the evidence that could have corroborated this is not there.

*Id.* at 503:1-14.

The jury was instructed only on the principal charges, burglary (with sexual assault as the predicate offense) and attempted sexual intercourse without consent. After deliberating about three hours, *id.* at 513:18-514:1, the jury found Gunderson guilty on both counts.

**B. Merits of Gunderson's Claim**

Claims of ineffective assistance of trial and appellate counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Gunderson must show both that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. A strong measure of deference is due to counsel's strategic decisions that are based on reasonable investigation and knowledge of the applicable law, *id.* at

10

690-91, but a court may not make "a *post hoc* rationalization of counsel's conduct" without regard to whether counsel actually recognized and considered viable alternative strategies, *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003).

The record developed in this Court shows that counsel made a reasonable strategic choice in light of the evidence and the treacherous legal landscape in which Gunderson found himself. First, the Court has already ruled that counsel would not have obtained an instruction on sexual assault (or attempted sexual assault) as a lesser included offense of attempted rape. Under Montana law, "a lesser included offense instruction is not supported by the evidence where the defendant's evidence or theory, if believed, would require an acquittal." *State v. Martinez*, 968 P.2d 705, 707-08 ¶¶ 9-15 (Mont. 1998); *see also, e.g.*, *State v. Jay*, 298 P.3d 396, 407 ¶ 44 (Mont. 2013). At trial, Gunderson testified that he did not touch or intend to touch Randall in a sexual manner. *See, e.g.*, Trial Tr. (Doc. 7-3) at 402:17-403:6. Based on Gunderson's testimony, a lesser-included offense of attempted sexual assault was not available. Gunderson has never alleged that federal constitutional law entitled him to a lesser-included instruction even if it conflicted with his own testimony. Nor has he alleged that counsel was ineffective for failing to recognize any such entitlement.

Although counsel could not specifically recall why he did not pursue the lesser-included instruction on criminal trespass, he did expressly contemplate

instructions on both lesser-included offenses, *see, e.g.*, Kelleher Dep. (Doc. 40-1) at 16:5-19:7; Dep. Exs. 1-2 (Doc. 40-1 at 29-30). And he did recall that he make a strategic decision to adopt an "all-or nothing" approach because, in light of the totality of the evidence, if the jury believed Randall (which they did), seeking a misdemeanor trespass conviction seemed like a "ludicrous alternative." Kelleher Dep. at 44:8-46:23. If they believed Gunderson (which they did not), then they would have acquitted on both charges. Kelleher concluded that asking for a criminal trespass instruction would have been "futile" because it would have undercut Gunderson's testimony about being invited into the apartment. *Id.* Under the *Strickland* standard, Kelleher's decision was a reasonable one.

Gunderson's situation was bleak. He had a long and serious criminal history. In terms of punishment, he faced a mandatory sentence of life without parole if convicted of attempted rape. Mont. Code Ann. § 46-18-219(1)(a). Even if acquitted of attempted rape but convicted of burglary, Gunderson faced a maximum sentence of 100 years, albeit with some prospect of parole, because he was a persistent felony offender. Mont. Code Ann. § 46-18-502(1), (2). Gunderson was 53 years old at the time of trial. Kelleher Dep. at 18:13-19:7, 20:23. Thus, when counsel considered an instruction on attempted sexual assault as a lesser included offense of attempted rape, he concluded he should be careful not to concede any offense, because even if Gunderson defeated the attempted rape charge, there was "just too

much at stake even with the burglary."*Id.* at 25:7-14.

Gunderson was in a tight spot. His intent was the principal bone of contention not only with respect to the burglary and attempted rape charges but also with respect to the lesser included offense of criminal trespass. A defendant is guilty of criminal trespass only if he *knowingly* enters or remains unlawfully; in other words, he must not only enter or remain without invitation, but he must know he has no invitation to enter or remain. *See City of Helena v. Lewis*, 860 P.2d 698, 703 (Mont. 1993).

Trial counsel explained, "my problem with lesser includeds is that it implies that the defendant did something wrong, and a lot of times my defense is that he just didn't do anything wrong; there's just nothing there." Kelleher Dep. at 38:7-11. That was the strategy Kelleher developed for Gunderson. Gunderson's defense was "fundamentally that it was a dumb but honest mistake" – "dumb, oafish, innocent, [and] stupid" – that Gunderson went into Randall's apartment. *Id.* at 8:11-12. In other words, counsel could not concede that Gunderson *knew* he entered or remained unlawfully. In effect, he had to persuade the jury that Gunderson acted *with reckless disregard* of his right to enter – "oafishly" rather than "knowingly." Counsel's impression that an instruction on criminal trespass was not supported by the evidence in Gunderson's testimony was reasonable. Kelleher Dep. at 42:11-43:8. In *Taylor v. State,* 335 P.3d 1218, 1223 (Mont.

2014), the Montana Supreme Court explained:

> "A lesser-included offense instruction is not supported by the evidence when the defendant's evidence or theory, if believed, would require an acquittal." [*State v. Jay, 2013 MT*] ¶¶ 42–44 (citations omitted) (Jay's theory that he had "lost consciousness" for a reason other than alcohol consumption required acquittal, not a lesser included instruction for driving under the influence.); *State v. Grindheim,* 2004 MT 311, ¶ 41, 323 Mont. 519, 101 P.3d 267 (Grindheim's theory of the facts supported outright acquittal, not a conviction for the lesser included crime of endangering the welfare of a child.).

It is true that trial counsel's closing argument conceded the first element of burglary, which is the offense of criminal trespass. But even as counsel conceded that Gunderson "didn't have any invitation or business being in Stephanie Randall's apartment," he still did not say Gunderson *knew* he did not have permission to enter. Gunderson testified repeatedly that he thought someone inside the apartment responded to him in a permissive way. Trial Tr. (Doc. 7-3) at 397:25-398:14, 425:15-426:17, 427:13-429:25. Thus, counsel's closing argument conceded only that Gunderson "entered without permission." Trial Tr. (Doc. 7-4) at 487:14-17. Counsel said:

> In order to convict Mr. Gunderson of burglary, the State must prove the following elements: One, he knowingly entered or remained unlawfully in an occupied structure. And, yeah, we concede that. He didn't have any invitation or business being in Stephanie Randall's apartment. Her apartment is an occupied structure. He entered without permission, so they proved that. I mean we admit that.
> But they also have to prove element number two, and element number two is that he went in with the purpose to commit the offense of sexual assault. . . .

> . . . [But] if he had the intent to do it as they claim, and he had ample opportunity to do it and he didn't do it, then that doesn't make sense. That doesn't fit.
>
> He went in there foolishly, because he thought he knew Stephanie Randall and he wanted to talk to her. And it was a dumb thing to do, he knows it was a dumb thing to do, but that's all he did. And I'm going to go through the evidence that's there, and most of the evidence that's not there to show, and I think you know this, the State has not proven their case.

Trial Tr. (Doc. 7-4) at 487:11-20, 489:17-490:2.

Counsel's purpose in closing was to parry the burglary charge by focusing on Gunderson's lack of intent to commit an offense. Of the elements of criminal trespass, counsel specifically addressed that Randall's apartment was an occupied structure and that Gunderson had no invitation or permission to enter. As he testified, he was trying to preserve his own credibility with the jury without undermining Gunderson's credibility. Kelleher Dep. at 22:2-14; 59:19-60:3.

Had an instruction on criminal trespass been placed before the jury, it could have undermined counsel's strategy on the burglary charge by directing jurors' attention to whether Gunderson really knew– contrary to his testimony – that he did not have permission or an invitation to enter. Consequently, counsel's "all or nothing" strategy was reasonable. The jury deliberated on the State's burglary charge without a lesser-included offense that may only have re-focused attention on Gunderson's truthfulness about his intent in entering Randall's apartment in the first place.

15

Counsel's failure to request a jury instruction on criminal trespass as a lesser included offense of burglary was not, as Gunderson now contends, "the result of simple neglect or misunderstanding of Gunderson's case and the applicable law." Merits Br. (Doc. 44) at 8. It was a reasonable strategic judgment call based on the evidence and testimony presented at trial. An instruction on criminal trespass could have pointed the jury right back to the questions that immediately comes to mind: what did Gunderson think he was doing? Why would a man enter a female stranger's apartment in the middle of the night even though he knows his entry is not permitted? If Gunderson thought about anything enough to "know" he entered without invitation or permission, no answer to these questions could be favorable to Gunderson, particularly in light of Randall's testimony that he removed some of his clothing, sat down on her bed, and began to pull her underwear off – testimony which everyone involved described as very strong and credible.

The claim is denied for lack of merit.

### III. <u>Certificate of Appealability</u>

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Gunderson's claims meets even the relatively low threshold for issuance of a COA. Although there was no direct evidence of Gunderson's intent, any reasonable juror could have found, beyond reasonable doubt, that Gunderson clandestinely entered Randall's apartment with the intent to have sexual intercourse – with consent if it materialized and without it if not. A trial court does not err when it instructs the jury that it may consider witnesses' motive, bias, or prejudice in testifying, even if the defendant is one of the witnesses; and Gunderson's parallel claim of ineffective assistance of appellate counsel also lacks merit. The jury was correctly instructed on the definitions of "purposely" and "knowingly" and on attempt. The jury was correctly instructed that the State had the burden of proving Gunderson guilty beyond reasonable doubt, so that any evidence the jury deemed "missing" would weigh against the State.

As to Gunderson's claims of ineffective assistance of counsel, an abandonment defense was not available unless Gunderson entered the apartment with the intent to commit a crime he would later abandon before completing it; nor is it available where the intended victim yells, kicks, scratches, pushes, and

17

ultimately pulls the perpetrator out of her apartment by his hair. Gunderson was not entitled to instructions on sexual assault, because he testified he did not touch Randall in a sexual manner and had no intention of doing so, or on criminal trespass, because he testified he thought he was permitted to enter. Counsel did not fail to impeach Randall because he brought out the significant inconsistencies in her testimony. Counsel did not have a valid challenge for cause against a juror who said she could keep a fair and open mind and would want a person like herself on the jury if she were Gunderson. Even if counsel had requested a mid-trial hearing on Gunderson's complaints about his attorney's performance, those complaints were not substantial enough to warrant one. There is no indication that Gunderson was deprived of exculpatory evidence; underwear not permanently stretched out of shape would not prove Gunderson did not try to pull them down, lack of Gunderson's DNA on Randall's neck would not prove he did not kiss her, and Randall's account of what happened did not suggest Gunderson's DNA would likely be found on her bedding or body – other than in blood on her hand, where it was indeed found. Gunderson's sentencing claims do not allege a violation of federal law.

Reasonable jurists would find no basis for further proceedings. A COA is not warranted.

Based on the foregoing, the Court enters the following:

**ORDER**

1. Gunderson's claim that counsel was ineffective because he failed to request an instruction on the lesser-included offense of criminal trespass is DENIED for lack of merit.

2. All other claims having been denied, the Petition (Doc. 1) is DENIED.

3. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Gunderson files a Notice of Appeal.

4. The Clerk shall enter, by separate document, judgment in favor of Respondents and against Gunderson.

DATED this 18th day of June, 2015.

/s/   *Carolyn S. Ostby*
United States Magistrate Judge